# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:05cv250

| | |
|---|---|
| JEFFREY LEVESQUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | **MEMORANDUM** |
| ) | **OF DECISION** |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(c) and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings and conclusions. A judgment reflecting such conclusions is being entered simultaneously herewith.

## FINDINGS AND CONCLUSIONS

**I.  Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff,

-1-

from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV.     Standard for Evaluating Allegations of Pain and Other Subjective Complaints

Plaintiff's claim for benefits includes allegations of pain or other subjective complaints. The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336. A two-step process for evaluating subjective complaint was developed by the appellate court in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), and is now reflected in Social Security Ruling 96-7p.[1]

Craig requires that the Commissioner apply a two-step analysis when assessing the credibility of a claimant's subjective complaints of pain. See 20 C.F.R. § 416.929. In conducting the two-step Craig analysis, Step One requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant" Craig, at 594. Once a medical impairment is identified by the ALJ in Step One that could reasonably be expected to produce the pain or other subjective complaint

---

[1]

"The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

asserted, the intensity and persistence of that pain is evaluated by the ALJ along with the extent to which such pain or other subjective complaint limits claimant's ability to engage in work.  Id.; see also 20 C.F.R. § 416.929(c).

Once the ALJ progresses to Step Two, he or she considers the following factors, which include: (1) plaintiff's testimony and other statements concerning pain or other subjective complaints; (2) plaintiff's medical history; (3) any laboratory findings; (4) objective medical evidence of pain if any; (5) the plaintiff's activities of daily living; and (6) any course of treatment the plaintiff has undergone to alleviate pain.  Craig, supra, at 595.

## V.    Substantial Evidence

### A.    Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record.  The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence.  The undersigned finds that it is.

### B.    Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled.  The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

### C. The Administrative Decision

The ALJ denied plaintiff's claim at the fifth step of the sequential evaluation process. Because the ALJ determined that plaintiff's ability to perform the full range of requirements for light work was impeded due to non-exertional limitations, the ALJ employed a Vocational Expert ("VE") to assist in determining whether or not there were a significant number of jobs in the national economy that plaintiff could perform. A.R., at 26. After posing a hypothetical to the VE, the VE testified as to a number of specific jobs at the light or sedentary exertional level that plaintiff could perform considering his age, education, work experience, and residual functional capacity ("RFC") as determined by the ALJ. Finding

that plaintiff was capable of making an adjustment to work that exists in significant numbers in the national economy, the ALJ entered a finding of not disabled at the fifth step of the sequential evaluation process. A.R., at 27-28.

### D.     Discussion

#### 1.     Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error: first, that the ALJ failed to give controlling weight to the opinion of plaintiff's physician, Dr. Jennifer Fortner; and second, that the ALJ's RFC determination is not supported by substantial evidence. After a brief discussion of the nature of plaintiff's claim, plaintiff's assignments of error will be discussed seriatim.

#### 2.     The Nature of Plaintiff's Claim

Prior to the date of alleged onset of disability, October15, 1999, plaintiff had relevant work as a correctional officer. The ALJ determined that since the alleged onset date, plaintiff has not engaged in gainful employment. At steps two and three of the sequential evaluation process, the ALJ found that plaintiff had severe impairments consisting of thoracolumbar spondylosis, a history of degenerative joint disease of the knee, shoulder arthritis/impingement, carpal tunnel syndrome, plantar fascitis, and a history of post traumatic stress disorder, but that he did not have any impairment or combination of impairments in or medically equal to any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4. A.R, at 22, 27 at Findings 3 and 4.

The ALJ next considered plaintiff's claim at the fourth and fifth steps of the sequential evaluation process. At those steps, the ALJ was required to determine whether plaintiff could perform his past relevant work or other work that existed in significant numbers in the national economy. To make those determinations, the ALJ was required to determine plaintiff's RFC, and found that plaintiff retained the RFC to perform sedentary to light work that required lifting/carrying no more than ten pounds frequently and twenty pounds maximum; standing/walking four to five hours in a workday, but not for prolonged periods at a time; sitting for six hours; no more than occasional crawling, kneeling, or reaching, especially overhead; no repetitive fine dexterity; and low stress work with only brief contact with the public and occasional interaction with co-workers. A.R., at 25, 27 at Finding 6.

In reaching such conclusions concerning RFC, the court's review of the ALJ's decision indicates that he first conducted an exhaustive review of all relevant evidence, including the consultative examination plaintiff obtained, medical evidence from treating sources, medical opinions from consultative sources utilized by the commissioner, and plaintiff's subjective evidence. Based on Plaintiff's RFC, and other vocational characteristics, the ALJ concluded that plaintiff could not perform his past relevant work, but he could perform other work that existed in significant numbers in the national economy. A.R., at 13-28.

### 3. First Assignment of Error

Plaintiff first argues that the ALJ failed to give controlling weight to the opinion of plaintiff's physician, Dr. Jennifer Fortner. Review of the administrative record and the ALJ's decision reveals that Dr. Fortner was not one of plaintiff's treating physicians, but was instead a consultative physician who saw plaintiff on one occasion, July 13, 2002 . A.R., at 256-60. No doubt, Dr. Fortner's opinion would be most helpful to plaintiff's claim if afforded controlling weight, which found that plaintiff

> would have difficulty performing work activities on a consistent basis or dealing with the usual stress encountered in the competitive work environment due to his post traumatic stress disorder which [was] currently not well controlled . . . .[and that Plaintiff was] prone to anxiety attacks, crying spells, and [was] easily frazzled when stressed.

A.R., at 260. To be given "controlling weight," the opinion must be from a treating physician. A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). The opinion of a treating physician is only entitled to controlling weight if it is supported by "clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2). A one time, consultative examination by a doctor does not make that person a treating physician, instead they are a consultative physician. In this district, the law is clear as to what weight should be afforded the opinion of such a doctor:

> If a physician's opinion is not given controlling weight, then the "factors listed below" and in paragraphs (d)(3) through (5) used to determine the amount of

weight to be given it are (1) the length of the treatment relationship and the frequency of examination ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"); (2) the nature and extent of the treatment relationship; (3) supportability ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); (4) consistency ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); and (5) specialization ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). Id. The regulation also makes clear, however, that the ultimate determination of disability is reserved for the Commissioner, and "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1).

Pittman v. Massanari 141 F.Supp.2d 601, 608 (W.D.N.C. 2001)(Horn, C.M.J.)

The ALJ satisfied his duty under Pittman and the underlying regulations by thoroughly discussing Dr. Fortner's opinion . See A.R., at 21, 24. The ALJ found that Dr. Fortner's opinion that plaintiff was incapable of "work activities on a consistent basis or dealing with the usual stress encountered in the competitive work environment such opinion" was internally inconsistent with her GAF finding of 60, A.R., at 24, her opinion that plaintiff's post traumatic stress disorder ("PTSD") was treatable, A.R., at 24, 260, and her finding that plaintiff would be able to function in jobs that did not require much interaction if he resumed treatment. A.R., at 24, 260. Dr. Fortner even acknowledged that plaintiff was resistant to treatment, A.R., at 24, 260, and that he had not been on medication for any impairment for a long period of time. A.R., at 24, 257. Finally, Dr. Fortner found that plaintiff had the

ability to perform simple and repetitive tasks, as well as complex and detailed tasks . A.R., at 24, 260.

In addition to being internally inconsistent, the ALJ also found that Dr. Fortner's conclusion was inconsistent with other evidence of record, which shows plaintiff had not actively sought or followed up on care offered for his history of PTSD. A.R., at 24. Specifically, the ALJ noted that Dr. Douglas Freeman had not provided psychological services to plaintiff since July 12, 2000. A.R., at 24, 254. Plaintiff also reported to the Commissioner that he no longer received any mental health treatment. A.R., at 47, 257. The ALJ reasoned that plaintiff resisted mental health treatment, A.R., at 24, a conclusion which is firmly supported by this record. Even Dr. Fortner reported that plaintiff was not currently involved in any treatment and was very resistant to participating in any treatment in the future. A.R., at 260. The Grace Occupational Health Center reported that plaintiff refused a referral to Dr. Lechman because Dr. Lechman had previously failed to specifically find that he could no longer perform his regular job. A.R., at 143. Finally, a Disability Determination Services (DDS) examiner reported that plaintiff had no interest in going to a mental or physical consultative examination. A.R., at 102. Further, the ALJ stated that plaintiff had not been on any medication for a mental impairment for a long period of time, A.R., at 24, and plaintiff admitted that he no longer took medication for depression. A.R., at 47. Thus, Dr. Fortner's vocational conclusion was entitled to little if any weight.

This straying of physicians into the realm of vocational determinations is filled with pitfalls inasmuch as a physician's medical view of inability to work may, as here, fail to take into consideration all the evidence as well as the regulations which assist the Commissioner in determining who is disabled. In this case, Dr. Fortner clearly did not understand the impact that a failure to follow up with prescribed treatment that can help a person return to a productive life has on a claim for disability benefits. In Preston v. Heckler, 769 F.2d 988 (4th Cir. 1985), the Court of Appeals for the Fourth Circuit held:

> Because noncompliance with an effective remedial measure provides an alternative basis for denying benefits, the fact finder may draw upon it to negate at any stage of the sequential analysis an otherwise allowable finding of disability. And because in the general proof scheme, this basis for denying benefits is analogous to that involving the establishment of residual functional capacity to engage in other gainful employment, the burden to establish it by substantial evidence should also be on the Secretary.

Id., at 990. The law and regulations governing the issue of failure to follow prescribed treatment or medication, as well as substantial evidence of record, support the ALJ's findings inasmuch as the record is clear that plaintiff's mental health concerns could not be considered disabling because plaintiff failed to follow prescribed treatment which could have alleviated them. The Social Security Regulations provide

> In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work. . . . If you do not follow the prescribed treatment without a good reason, we will not find you disabled, or if you are already receiving benefits, we will stop paying you benefits.

20 C.F.R. 404.1530(a)-(b). The regulations list the following "good reason[s] for not following treatment:

(1) The specific medical treatment is contrary to the established teaching and tenets of your religion.

(2) The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.

(3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.

(4) The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5) The treatment involves amputation of an extremity, or a major part of an extremity.

20 C.F.R. 404.1530(c).

In this case, there is some mention of an inability to afford treatment. Social Security Ruling 82-59 discusses "justifiable cause for failure to follow prescribed treatment" in more detail. It adds more reasons to the list set out in the above regulation, including the inability to afford treatment, which is what plaintiff is alleging in this appeal. The ruling explains:

> The individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable. Although a free or subsidized source of treatment is often available, the claim may be allowed when such treatment is not reasonably available in the local community. All possible resources (e.g., clinics, charitable and public assistance agencies, etc.) must be explored. Contacts with such resources and the plaintiff's financial circumstances must be documented.

S.S.R. 82-59, at 5. In Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984), the appellate court upheld the ruling's requirement that a plaintiff show he or she has exhausted all sources of free or subsidized treatment and document his or her financial circumstances before a plaintiff can show good cause for failing to comply with prescribed treatment. Id. Clearly, the burden of production is the Commissioner's with respect to the issue of failing to follow prescribed treatment. See Preston v. Heckler, supra, at 990. This burden has been met with the extensive recitation of evidence that the plaintiff did not take prescribed medications and did not follow up on referrals. In turn, the plaintiff has not, however, satisfied the burden of providing evidence to meet the requirements of "good cause" for failing to follow treatment due to plaintiff's financial condition. See Gordon, supra, at 237. The ALJ properly discounted the plaintiff's allegations of disability, and Dr. Fortner's consultative vocational conclusions, due to symptoms which could easily have been controlled.

Plaintiff also takes issue with the ALJ's characterization of Dr. Fortner's GAF score of 60 as to plaintiff as "mild to moderate," when in fact it is only "moderate." While such finding was indeed error, see American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders*, at 30 (4th Ed. 1994), it was *de minimis* and harmless inasmuch as even moderate difficulties in social, occupational, or school functioning do not amount to serious symptoms that would have been associated with a GAF of 41-50. In any event, the ALJ provided ample additional reasons for not assigning controlling weight to Dr. Fortner's conclusion as discussed above. See Perkins v. Massanari, 2001 WL 34382041, *11-

*12 (W.D.Wis. 2001).[2]

Finally, the opinions of two state agency physicians specifically addressed Dr. Fortner's findings. Doctors Lavonne Fox and Margaret N. Wiebe, psychologists, reviewed the evidence of record and specifically considered Dr. Fortner's opinion. A.R., at 272, 276. Doctors Fox and Wiebe opined that plaintiff had the mental RFC to perform work in a low stress environment where there was little demand for interpersonal interaction, A.R., at 272, 276, which supports the ALJ's finding that plaintiff retained the mental RFC to perform low stress work with only brief contact with the public and occasional interaction with co-workers. A.R., at 25, 27 at Finding 6.

The undersigned can find no merit to plaintiff's first assignment of error requiring reversal of the Commissioner's final decision. Such assignment of error is overruled.

### 4. Second Assignment of Error

In his second assignment of error, plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, the ALJ determined that plaintiff retained the mental RFC to perform low stress work with only brief contact with the public and occasional interaction with co-workers. A.R., at 25, 27. Review of the administrative record shows that substantial evidence supports the ALJ's assessment of Plaintiff mental RFC.

---

[2] Due to the limits of electronic case filing, a copy of such unpublished decision is incorporated herein by reference to the Westlaw citation.

The ALJ's determination of mental RFC finds substantial support is the opinions of Doctors Fox and Wiebe, the two state agency psychologists. They opined that plaintiff had the mental RFC to perform work in a low stress environment where there was little demand for interpersonal interaction. A.R., at 272, 276. Such evidence is wholly consistent with the ALJ's finding that plaintiff retained the mental RFC to perform low stress work involving only brief contact with the public and occasional interaction with co-workers. A.R., at 25, 27 at Finding 6. The ALJ even noted the opinions rendered by such doctors when he assessed plaintiff's mental RFC. A.R., at 25.

The ALJ's determination of mental RFC finds substantial support is the opinions of Dr. James B. Broselow and Dr. Frank Smeeks. A.R., at 139, 149. These doctors found plaintiff to be "alert." Id.

The ALJ's determination of mental RFC finds substantial support in the lay evidence of record, including the plaintiff's own reports of daily activities, and the frequency of any treatment plaintiff received. S.S.R. 96-8p; 20 C.F.R. § 404.1545(a). Such lay evidence supported the ALJ's finding that plaintiff retained the mental RFC to perform low stress work involving only brief contact with the public and occasional interaction with co-workers. A.R., at 25, 27 at Finding 6. Plaintiff himself reported that counseling. A.R., at 102, and medications, A.R., at 42, had previously helped to improve his PTSD symptoms, and that he was no longer receiving mental health treatment. A.R., at 47, 257. Further, plaintiff denied that he suffered from significant depression, A.R., at 135, and he reported that his daily

activities included paying his bills, A.R., at 102, taking care of himself, id., selling car parts, A.R., at 259, skinning deer hides, A.R., at 231, performing household chores, A.R., at 259, driving, A.R., at 45, 256, 264, shopping, A.R., at 45, visiting with family and friends, A.R., at 45, watching television, A.R., at 44, mowing his lawn, A.R., at 264, 301, enjoying auto mechanics, A.R., at 264, caring for his daughter every other weekend, A.R., at 45-46, 102, 259, and going to the movies with his daughter. A.R., at 259.

Substantial evidence supports the ALJ's finding that plaintiff retained the mental RFC to perform low stress work with only brief contact with the public and occasional interaction with co-workers. Plaintiff's assignment of error is, therefore, overruled.

### 5. Determination at the Fifth Step

The court also finds that substantial evidence supports the ALJ's finding that plaintiff could perform other work that existed in significant numbers in the national economy, in light of the challenged mental RFC assessment. Because the ALJ's mental RFC determination is supported by substantial evidence, it is clear that the hypothetical he posed to the VE based on such mental RFC is also proper. Hypothetical questions posed by an ALJ to a vocational expert must fully describe a plaintiff's impairments and accurately set forth the extent and duration of the claimant's pain, if any. Cornett v. Califano, 590 F.2d 91 (4th Cir. 1978). Where the ALJ properly formulates his hypothetical to accurately reflect the condition and limitations of the claimant, the ALJ is entitled to afford the opinion of the vocational expert great weight. Shively v. Heckler, 739 F.2d 984 (4th Cir. 1984). Because

plaintiff's conditions and limitations were accurately portrayed to the vocational expert, the ALJ did not fail to consider all the evidence, and his reliance on the opinion of the vocational expert that jobs were available to a person with plaintiff's limitations was proper.

In response to the ALJ's hypothetical question, the vocational expert testified that plaintiff could perform the unskilled jobs of inspector (11,300 positions in North Carolina and 341,337 positions nationally), laundry classifier (7,927 positions in North Carolina and 241,716 positions nationally), ink printer (2,359 positions in North Carolina and 124,275 positions nationally), and patcher (11,300 positions in North Carolina and 341,337 positions nationally), and that such jobs were not precluded by the mental limitations contained in the ALJ's hypothetical question. A.R., at 52-55.

In finding that Plaintiff could perform other work that existed in significant numbers in the national economy, the ALJ adopted the vocational expert's testimony. A.R., at 26, 27-28 at Finding 12. Since the ALJ's step five determination was based upon a hypothetical question that accurately stated the limitations contained in his mental RFC assessment, substantial evidence supports the ALJ's finding that those mental limitations would not preclude plaintiff from performing other work that existed in significant numbers in the national economy.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and

plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See <u>Richardson v. Perales</u>, supra; <u>Hays v. Sullivan</u>, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson v. Perales</u>, supra, the undersigned will deny plaintiff's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and, therefore, affirm the decision of the Commissioner.

                                            Signed: June 6, 2006

                                            Dennis L. Howell
                                            United States Magistrate Judge